IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| NATIONAL ELECTRICAL BENEFIT FUND | * |
| and | * |
| NATIONAL ELECTRICAL ANNUITY PLAN | * |
| Plaintiffs, | * |
| v. | *   Civil Case No.: PWG-16-1580 |
| 3W ELECTRIC LLC, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

National Electrical Benefit Fund ("NEBF") and National Electrical Annuity Plan ("NEAP") (referred to collectively as "Plaintiffs"), filed this civil enforcement action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking delinquent pension contributions pursuant to §§ 502 and 515 of ERISA, 29 U.S.C. §§ 1132, 1145. Compl. ¶¶ 1, 8–10, ECF No. 1. I struck Defendant's Answer filed *pro se* by a member of the LLC, ECF No. 5, for failure to comply with Local Rule 101.1(a), which requires corporate defendants to be represented by counsel. Order, ECF No. 6. Defendant did not file any further response to the pleadings. Plaintiffs have since filed a Motion for Clerk's Entry of Default, ECF No. 8, which was granted, ECF No. 10, and a Motion for Default Judgment, Pls.' Mot., ECF No. 9., to which Defendant has also not responded. A Suggestion of Bankruptcy, Def.'s Bankr. Sugg. ECF No. 11, was filed giving notice that the United States Bankruptcy Court for the Western District of Arkansas ordered relief for a Mr. William Weems on October 25,

2016. Having reviewed the filings, I find that a hearing is unnecessary in this case. *See* Loc. R. 105.6 (D. Md.). Plaintiffs have demonstrated liability and established the damages they seek. Accordingly, Plaintiffs' Motion for Default Judgment will be granted.

## **Background**

Plaintiffs are multiemployer pension benefit plans subject to ERISA. 29 U.S.C. §§ 1002(3), 1003(a); Compl. ¶¶ 3–4. NEBF is a defined benefit plan and NEAP is a defined contribution plan. 29 U.S.C. §§ 1002(34)–(35); Compl. ¶¶ 3–4. Both plans were established pursuant to an agreement between the International Brotherhood of Electrical Workers and the National Electrical Contractors Association. Compl. ¶¶ 3–4.

Defendant, 3W Electric, LLC, is an Arkansas limited liability company ("Defendant" or "the LLC"). *Id.* ¶ 6. Defendant is an employer who agreed to participate in NEBF and NEAP pursuant to agreements with the International Brotherhood of Electrical Workers Local Union 222, the collective bargaining representative of the company's employees. *Id.* ¶ 7. Plaintiffs' complaint seeks a total of $178,535.61 in damages and attorney's fees and costs, as well as injunctive relief directing Defendant to submit required payroll reporting forms for the months of February 2016 until present, along with any corresponding contributions, interest, and liquidated damages, or submit to an audit. *Id.* at ¶¶ 8–10.

Mr. Weems, a member of the LLC, filed a *pro se* Answer on August 29, 2016. ECF No. 5. The Answer stated that Defendant intended to file for bankruptcy under Title 13. *Id.* I struck the Answer from the record for failure to comply with Local Rule 101.1(a), which requires corporate defendants to be represented by counsel. Order, ECF No. 6. I did, however, advise Mr. Weems to notify the court if Defendant did file for bankruptcy. *Id.* On September 14, 2016, Plaintiffs filed a Motion for Clerk's Entry of Default, ECF No. 8, and a Motion for Default

2

Judgment, ECF No. 9. The Office of the Clerk entered an Order of Default for want of answer or other defense on October 6, 2016. ECF No. 10. On October 31, 2016, a Suggestion of Bankruptcy was filed with the Court. Def.'s Bankr. Sugg., ECF No. 11. The Suggestion explained that Mr. Weems filed a bankruptcy petition and that the United States Bankruptcy Court for the Western District of Arkansas ordered relief for that petition on October 25, 2016. *Id.*

## Standard of Review

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process when a party applies for default judgment. First, the rule provides that "when a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Following the Clerk's entry of default, "the plaintiff [then may] seek a default judgment." *Godlove v. Martinsburg Senior Towers, LP*, No. 14-CV-132, 2015 WL 746934, at *1 (N.D.W. Va. Feb. 20, 2015); *see also* Fed. R. Civ. P. 55(b). "The Fourth Circuit has a 'strong policy' that 'cases be decided on their merits.'" *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 420 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). However, "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *Id.* at 420–22.

In determining whether to grant a motion for default judgment, the Court takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). If the Court finds that "liability is established, [it] must then determine the appropriate amount of damages." *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 484 (citing *Ryan*, 253 F.3d at 780–81). In order to do so, "the court may conduct an evidentiary hearing, or may dispense with a hearing if there is an

adequate evidentiary basis in the record from which to calculate an award." *Mata v. G.O. Contractors Grp., Ltd.*, No. TDC-14-3287, 2015 WL 6674650, at *3 (D. Md. Oct. 29, 2015); *see also* Fed. R. Civ. P. 55(b).

### Discussion

### Mr. Weems's Automatic Stay

As an initial matter, Mr. Weems's Suggestion of Bankruptcy asks that this action be stayed under 11 U.S.C. § 362. *Id.* The filing of a Chapter 13 bankruptcy petition automatically stays "the commencement or continuation . . . of a judicial . . . action or proceeding against the *debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the *debtor* that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1) (emphasis added). "The purpose of the automatic stay, in addition to protecting the relative position of creditors, is to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *Winters ex rel. McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996). It is well settled that an automatic stay only applies to the debtor, not co-defendants or related parties. *See e.g., Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007) (holding that the automatic stay did not apply to actions against debtor's non-bankrupt subsidiary corporation); *Williford v. Armstrong World Indus.*, 715 F.2d 124, 126 (4th Cir. 1983) (holding that the automatic stay did not apply to codebtors, but observing that such a stay can extend to codebtors of consumer debts). As I understand it, Mr. Weems filed for bankruptcy relief, Def.'s Bankr. Sugg., but Mr. Weems is not a named party to this case. *See* Compl. ¶¶ 1, 6. The only named Defendant is the LLC. *Id.*

A member or agent of an Arkansas LLC is not liable for the debts of the company. Ark. Code Ann. § 4-32-304 ("[A] person who is a member, manager, agent or employee of a limited

liability company is not liable for a debt, obligation, or liability of the limited liability company, whether arising in contract, tort, or otherwise . . . ."). Furthermore, under Arkansas law, an LLC is a separate legal entity from its members. *See Anderson v. Stewart*, 234 S.W.3d 295, 298 (Ark. 2006) (applying the "nearly universal rule that a corporation and its stockholders are separate and distinct entities, even though a stockholder may own the majority of the stock[]" to an LLC and its sole member). Thus, a member's bankruptcy does not automatically stay proceedings against an LLC.

An automatic stay further prevents "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). But a member's ownership interest in an LCC does not give that member direct ownership interest in the assets of the LCC. *See Kreisler*, 478 F.3d at 214 (holding that a parent corporation's ownership interest in a subsidiary LLC "does not give the parent any direct interest in the *assets* of the subsidiary."). As the Fourth Circuit explained in *Kreisler*, the owner of an LLC could have established ownership interest in the assets, but chose instead to create an LLC and "[h]aving assumed whatever benefits flowed from that decision, it cannot now ignore the existence of the LLC in order to escape its disadvantages." *Id.* Although Mr. Weems's ownership interest in the LLC may be part of the bankruptcy estate, the property interests of the LLC remain its own and are not protected by Mr. Weems's automatic stay.

Nor, does this case fall under the "unusual circumstances" exception which extends the protection of an automatic stay to third parties. In *A.H. Robins Co., Inc. v. Piccinin*, the Fourth Circuit explained that an

> unusual situation . . . arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit

against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case.

788 F.2d 994, 999 (4th Cir. 1986).

Courts, however, have not recognized membership in or ownership of an LLC to constitute such an "unusual situation." *See e.g., In re McCormick*, 381 B.R. 594, 602 (Bankr. S.D.N.Y. 2008) (holding that actions against a bankruptcy debtor's wholly-owned LLC did not violate the automatic stay because the LLC was a separate legal entity); *In re Calhoun*, 312 B.R. 380 (Bankr. N.D. Iowa 2004) (holding that a debtor's bankruptcy stay does not extend to a LLC simply because the debtor held ownership interest in that LLC). As detailed above, the LLC is the only Defendant and is a separate legal entity from Mr. Weems. Accordingly, I find that the automatic stay does not prevent judicial action against 3W Electric, LLC.

### Default Judgment

A. Liability

Plaintiffs' well-pleaded factual allegations, taken as true, establish liability under ERISA. Section 515 of ERISA, states that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C.A. § 1145.

Plaintiffs' further rely on section 502(g), which, in the event of a delinquent-contributions judgment in favor of the plaintiff pension plan, requires the court to award: (1) the delinquent contributions; (2) any interest on the delinquent contributions; (3) liquidated damages in "an amount equal to the greater of . . . (i) interest on the [delinquent] contributions, or . . . (ii) liquidated damages provided for under the plan not in excess of 20 percent" of the delinquent

contributions; (4) reasonable attorney's fees and costs; and (5) "such other legal and equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2). "The Supreme Court has found that these sections of ERISA 'provide trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions.'" *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685–86 (D. Md. 2013) (quoting *Laborers Health & Welfare Trust Fund for Northern Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988)). Furthermore, in an action to collect delinquent contributions, "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997).

Plaintiffs provide a Letter of Assent, ECF No. 9-3, the Collective Bargaining Agreement, ECF No. 9-4, the NEBF Trust Agreement, ECF No. 9-5, and the NEAP Trust Agreement, ECF No. 9-6, as proof that Defendant agreed to make full and timely monthly payments to Plaintiffs. Defendant further agreed to pay liquidated damages, interest, audit costs, and any additional costs incurred collecting the delinquent contributions. *See* NEBF Trust Agreement § 6.9; NEAP Trust Agreement § 6.8. Plaintiffs also filed the Affidavit of Angel Losquadro, Director of the Plaintiffs' Audit and Delinquency Department in support of the claim that Defendant violated the terms of the Trust Agreements. Losquadro Aff. ¶ 9, ECF No. 9-2. Losquadro attests to being familiar with the Trust Agreements and the issues at hand. *See id.* ¶ 1. Losquadro states that Defendant owes NEBF $20,543.55 and NEAP $121,678.39 in unpaid contributions for the period of August 2015 to January 2016. *Id.* ¶ 9. Losquadro further states that Defendant owes interest on those delinquent contributions, liquidated damages, and legal costs and fees. *Id.* ¶¶ 8, 12, 15. The amount of delinquent contributions cited by Losquadro is based on Defendant's

self-reported failure and refusal to submit contributions. *Id.* ¶ 9. Lastly, Losquadro attests that Defendant has not submitted payroll reports or the corresponding contributions for any periods since January 2016. *Id.* ¶ 10. Thus, Plaintiffs' well-plead factual allegations establish liability.

B. <u>Damages</u>

Having established ERISA liability, I must now determine the appropriate amount of damages. Plaintiffs are entitled to: the amount of delinquent contributions; interest; an amount "equal to the greater of (1) the interest on the [delinquent] contributions or (2) liquidated damages provided for under the plan and not in excess of 20 percent of the [delinquent] contributions; reasonable attorneys' fees and costs; and other legal and equitable relief this Court deems appropriate." *Int'l Painters*, 919 F. Supp. 2d at 686 (citing 29 U.S.C. § 1132(g)(2)). In support of the Plaintiffs' request for delinquent contributions, interest, liquidated damages, and injunctive relief ordering Defendant to report payroll for all periods since January 2016 or submit to an audit, Plaintiffs submit a NEBF Delinquency Report, ECF No. 9-7, a NEAP Delinquency Report, ECF No. 9-8, as well as Lasquadro's Affidavit and the Trust Agreements. Jennifer Bush Hawkins, Plaintiffs' attorney of record, also submitted an affidavit in support of entry of judgment and demand for attorney's fees. *See* Hawkins Aff., ECF No. 9-1.

Plaintiffs' Motion for Default Judgment asserts that the Defendant owes NEBF: $20,543.55 for delinquent contributions; $1,883.09 in interest; $4,108.71 in liquidated damages; and $1,221.70 in attorney's fees and costs, for a total of $27,658.05 in damages.[1] Pls.' Mot. ¶ 8.

---

[1] Plaintiffs' Motion requests specific amounts in damages for delinquent contributions, interest, liquidated damages, and in attorney's fees and costs. Following the categorical breakdowns of damages, Plaintiffs' Motion motion provides a total of all damages and attorney's fees and costs equaling $27,658.05 for NEBF and $158,186.83 for NEAP. Pls.' Mot. ¶¶ 8–9. These stated totals, however are both $99.00 less than the actual sums of the requested delinquent contributions, interest, liquidated damages, and attorney's fees and costs. *See id.* The cause of this error is unknown. Since I evaluate the appropriate amount of each separate request for

Plaintiffs further assert that the Defendant owes NEAP: $121,678.39 for delinquent contributions; $11,050.06 in interest; $24,335.68 in liquidated damages; and $1,221.70 in attorney's fees and costs, for a total of $158,186.83 in damages. *Id.* ¶ 9. I note that the amount of requested interest increased from a combined $9,752.37 in the Complaint, ¶¶ 8–9, to a combined $12,933.15. Pls.' Mot. ¶¶ 8–9. Generally, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). If, however, the complaint provides notice to the defendant "that additional unspecified damages may be awarded if the case proceeds to judgment," the amount of damages awarded may exceed the amount of damages specifically pleaded without violating Federal Rule of Civil Procedure 54(c). *Nat'l Automatic Sprinkler Indus. Welfare Fund v. Harvey*, No. GJH-15-521, 2016 WL 297425, at *5 (D. Md. Jan. 21, 2016). I will allow the increase because the Complaint provided notice that the amount of interest may increase. *See* Compl. 7.

All told, Plaintiffs seek: (1) $183,559.48 in damages; (2) $2,443.40 in attorney's fees and costs; (3) any additional costs incurred in connection with enforcement of any judgment; (3) interest on all amounts awarded; and (4) injunctive relief ordering Defendant to remit payroll reporting and any corresponding contribution, interest, and liquidated damages for the periods since January 2016 or, in the alternative, submit to an audit. *Id.* ¶¶ 8–10.

1. *Delinquent Contributions*

Angel Losquadro, Director of Plaintiffs' Audit and Delinquency Department, attests that 3W Electric, LLC owes NEBF $20,543.55 and NEAP $121,678.39 in delinquent contributions for the periods from August 2015 to January 2016. Losquado Aff. ¶¶ 1, 9. These amounts are based on Defendant's self-reported failure and refusal to submit contributions. *See id.* ¶ 9;

---

damages, I will disregard the incorrect total sums offered by Plaintiffs' Motion and award damages accordingly.

NEBF Delinquency Report; NEAP Delinquency Report. I find the evidentiary basis in the record adequate and the amounts appropriate. Accordingly, I award NEBF $20,543.55 in delinquent contributions and NEAP $121,678.39 in delinquent contributions.

2. *Interest*

ERISA provides for interest on delinquent contributions "using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Both Trust Agreements provide that interest on delinquent contributions will be assessed "at a ten percent (10%) annual rate compounded monthly throughout the period of delinquency[.]" NEBF Trust Agreement § 6.9.3; NEAP Trust Agreement § 6.8.3. Applying this interest rate, NEBF claims $1,883.09 in interest and NEAP claims $11,050.06 in interest. Pls.' Mot. ¶¶ 8–9. I find the evidentiary basis in the record adequate and the amounts appropriate. Accordingly, I award NEBF $1,883.09 in interest and NEAP $11,050.06 in interest.

3. *Liquidated Damages*

Liquidated damages can be awarded at the greater amount of either: (1) the interest on delinquent contributions; or (2) the "liquidated damages provided for under the plan and not in excess of 20 percent" of the delinquent contributions. 29 U.S.C. § 1132(g)(2)(C)(i)–(ii). Both Trust Agreements authorize the assessment of "an amount up to twenty percent (20%) of the amount found to be delinquent . . ." as liquidated damages. NEBF Trust Agreement § 6.9.2; NEAP Trust Agreement § 6.8.2. Applying this liquidated-damages rate, NEBF claims $4,108.71 in liquidated damages and NEAP claims $24,335.68 in liquidated damages. Pls.' Mot. ¶¶ 8–9. I find the evidentiary basis in the record adequate and the amounts appropriate. Accordingly, I award NEBF $4,108.71 in liquidated damages and NEAP $24,335.68 in liquidated damages.

4. *Attorney's Fees and Costs*

Plaintiffs claim attorney's fees and costs totaling $1,221.70 for NEBF and $1,221.70 for NEAP. Pls.' Mot. ¶¶ 8–9. If a delinquent-contributions judgment is made in favor of a plaintiff plan, I must award reasonable attorney's fees and costs, to be paid by the defendant. *See* 29 U.S.C. § 1132(g)(2)(D). The Trust Agreements also provide for the payment of attorney's fees and costs incurred in collecting delinquent contributions. *See* NEBF Trust Agreement § 6.9.5; NEAP Trust Agreement § 6.8.5. A more detailed accounting of the attorney's fees and costs are provided in Hawkins's Affidavit. Hawkins Aff. ¶¶ 9–10.[2]

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This approach is commonly known as the "lodestar" method. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). In assessing reasonableness, the Fourth Circuit has instructed district courts to consider certain factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).

Applying the lodestar method, I find that Plaintiffs' attorney billed at a reasonable hourly rate. Plaintiffs' attorney billed an hourly rate of $379.00 and has practiced law for twenty-two years. Hawkins Aff. ¶¶ 7–8. This falls within the range of reasonable hourly rates provided in

---

[2] Hawkins' Affidavit mislabels paragraphs 10 and 11 as paragraphs 7 and 8.

Appendix B of the Local Rules — "Rules and Guidelines Determining Lodestar Attorneys' Fees." Loc. R. App. B. Accordingly, I find the hourly rate reasonable.

Hawkins' Affidavit also includes a summary chart record of the fees and costs. *See* Hawkins Aff. ¶¶ 9-10 and attached. Although contemporaneous time records are preferred, a summary chart can be sufficient if it includes enough information to determine the reasonableness of the fees. *Beyond Sys., Inc. v. World Ave. USA, LLC*, No. CIV.A. PJM-08-921, 2011 WL 3419565, at *6 (D. Md. Aug. 1, 2011) (citing *CoStar Grp., Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000)). The affidavit indicates that Hawkins billed a total of 4.6 hours — 2.4 hours preparing the pleadings and 2.2 hours on motions practice. *See id.* After reviewing the filings, this time record does not reflect any overly redundant, excessive, or unnecessary work. Accordingly, the fee is reasonable and approved.

Plaintiffs also seek the $400 statutory filing fee and $300 process service fee in costs. *Id.* "Costs that may be charged include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.' " *Trs. of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Westland Fire Prot., Inc.*, No. DKC 12-1421, 2014 WL 824121, at *3 (D. Md. Feb. 28, 2014) (citing *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988)). The docket reflects that Plaintiffs paid the $400.00 filing fee, therefore, Plaintiffs are entitled to recover the fee. *See Nat'l Elec. Ben. Fund v. AC-DC Elec., Inc.*, No. CIV.A. DKC 11-0893, 2011 WL 6153022, at *4 (D. Md. Dec. 9, 2011). Plaintiffs also provide documentation to support the $300 process service fee. *See* Hawkins Aff. ¶¶ 9–10 & attach. Accordingly, I find the requested attorney's fees and costs reasonable and will award them in full.

5. *Other Legal or Equitable Relief as the Court Deems Appropriate*

may further authorize "such legal and equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). One such form of relief, deemed appropriate in similar cases, is a permanent injunction ordering compliance with reporting provisions or cooperation with an audit. *See e.g., Int'l Painters & Allied Trades Indus. Pension Fund v. DLC Corp.*, No. WDQ-11-1938, 2012 WL 1229491, at *7 (D. Md. Apr. 11, 2012) (ordering employer to submit to audit provisions of labor contracts). To obtain a permanent injunction, "a plaintiff must show (1) irreparable injury, (2) remedies at law are inadequate to compensate for that injury, (3) the balance of hardships between the plaintiff and defendant warrants a remedy, and (4) an injunction would not disserve the public interest." *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (quoting *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 156–57 (2010)). Plaintiffs ask that I order Defendant to:

> remit its required payroll reporting forms to Plaintiffs along with corresponding contributions, interest, and liquidated damages for the period February 2016 through the present, or that it submit its payroll records for an audit within 30 days of this Judgment, and that it thereafter remit to NEBF and NEAP the amount of contributions found to be due and owing, plus the corresponding interest, liquidated damages, and audit fees . . . .

Proposed Order 2, ECF No. 9-9.

I find that Plaintiffs established each of the four elements. The monetary damages requested alone cannot make Plaintiffs whole. There is more than a year's worth of outstanding payroll reports. *See* Losquadro Aff. ¶ 10. This failure to report compounds Plaintiffs' injuries, particularly because without this information Plaintiffs' cannot accurately calculate the full extent of contributions Defendant has failed to make to the pension plans. *Id.* ¶¶ 10, 11. Thus, Plaintiffs have demonstrated irreparable injury and the inadequacy of remedies at law. Moreover, the balance of hardship favors Plaintiffs because Defendant agreed in the Trust Agreements to comply with payroll reporting and any necessary audits. *See* NEBF Trust

13

Agreement §§ 6.6.2, 6.7.7; NEAP Trust Agreement §§ 6.5.2, 6.6.1. Thus, any order would merely enforce Defendant's preexisting obligations. Finally, the enforcement of employee pension agreements under ERISA serves the public interest by ensuring that employees receive the pensions they are owed. Accordingly, I will grant Plaintiffs' request for injunctive relief and will order Defendant to, within 30 days of this judgment, either submit payroll reports for the periods of February 2016 through the present along with corresponding contributions, interest, and liquidated damages or to submit to an audit. Should Defendant submit to an audit, which subsequently reveals delinquent contributions, Plaintiffs may petition the court, with proper evidentiary support, for relief. *See Nat'l Elec. Ben. Fund*, No. CIV.A. DKC 11-0893, 2011 WL 6153022, at *3.

## Conclusion

For the foregoing reasons, Mr. Weems's automatic bankruptcy stay does not extend to the Defendant. Accordingly, Plaintiffs' Motion for Default Judgment is granted. Judgment will be entered for NEBF in the amount of $26,535.35 in damages and $1,221.70 in attorney's fees and costs. Judgment is entered for NEAP in the amount of $157,064.13 in damages and $1,221.70 in attorney's fees and costs. In accordance with the Trust Agreements, Defendant is ordered to, within 30 days of this judgment, either comply with the reporting and remitting requirements for the February 2016 period through the present or submit to an audit. Lastly, this Judgment is entered without prejudice to any claims that may arise out of the audit, should it occur.

A separate Order follows.

Dated: March 20, 2017

/S/
Paul W. Grimm
United States District Judge